WEAVER, J.
(dissenting). The majority’s assertion that its decision today is “[a]t the heart of preserving an *427 organized polity” is false. Ante at 375.1 concur fully in Justice CAVANAGH’s dissent because I agree that the circuit court’s dismissal of plaintiffs case violated her First Amendment right to free speech.
In addition to the First Amendment violation, I write to explain that the premise of the circuit court’s dismissal of plaintiffs case had no legal validity and, therefore, the majority’s acrobatic effort to justify its decision to affirm the circuit court’s order does not preserve an organized polity, it undermines it.
An organized polity is governed by the law and is preserved by courts that apply the law and objectively state the facts. In this case, the circuit court did not establish a legal foundation for its dismissal of plaintiffs case, it acted on a whim. The circuit court’s decision was, therefore, an abuse of discretion. Now, the majority legitimizes the circuit court’s order by misstating the facts of the case and misapplying the law. The majority’s decision abuses this Court’s appellate review power and, therefore, is inconsistent with the preservation of an ordered polity.
The circuit court in this case dismissed with prejudice plaintiff Justine Maldonado’s sexual harassment action against defendant Ford Motor Company and Ford’s employee, defendant Daniel E Bennett. The circuit court premised its dismissal on pretrial publicity that it attributed to plaintiff and plaintiffs lawyers and that referred to defendant Bennett’s prior conviction for indecent exposure in an unrelated case. The circuit court found that the publicity violated the Michigan Rules of Professional Conduct, MRPC 3.6. The Rules of Professional Conduct govern the conduct of lawyers. MRPC 3.6 prohibits lawyers from making extrajudicial statements about a case that might materially prejudice judicial proceedings. Despite the fact that MRPC 3.6 *428 only applies to the conduct of lawyers and the fact that there is no evidence that her lawyers violated the rule, the circuit court opined that Ms. Maldonado’s activities could be imputed to her lawyers and dismissed the case.
The question presented is whether the circuit court’s dismissal with prejudice of Ms. Maldonado’s case was an abuse of discretion. I would hold that it was an abuse of the circuit court’s discretion to dismiss plaintiffs case for the reasons set forth below, and for those stated well by Justice CAVANAGH in his dissent.
i
Because the majority mischaracterizes facts pertinent to understanding this case, the following time line lists the important dates and events in this case’s history:
• June 9, 2000: Ms. Maldonado files her sexual harassment cause of action.
• June 9, 2000: The Detroit Free Press publishes an article referring to defendant Bennett’s unrelated indecent exposure conviction. The pending case, including statements about the case by both sides, is regularly in the media thereafter.
• January 19, 2001: Judge Kathleen Macdonald grants the motion to exclude from plaintiffs trial evidence of defendant Bennett’s prior and unrelated indecent exposure conviction.
• February 16, 2001: Judge Macdonald enters an order excluding from plaintiffs trial evidence of defendant Bennett’s prior and unrelated indecent exposure conviction.
• September 11, 2001: Plaintiffs lawyers issue a press release referring to defendant Bennett’s prior and unrelated conviction for indecent exposure.
*429 • November 2001: Defendant Bennett’s prior and unrelated conviction for indecent exposure is expunged.
• June 21, 2002: During a hearing regarding the motion to dissolve Judge Macdonald’s order to exclude evidence of the expunged and unrelated indecent exposure conviction, Judge William Giovan warns the parties about pretrial publicity and states that if a party violates some ethical obligation, the case could be dismissed.[1]
• July 3,2002: During a hearing on plaintiffs motion for Judge Giovan’s disqualification, Judge Giovan states on the record that his prior warning was not a court order.
• August 21, 2002: During a hearing on defendant’s motion to dismiss the case, defendant’s attorney states that the case was in the news again. Judge Giovan dismisses the case with prejudice.
ii
The circuit court did not establish a legal foundation to support its dismissal of Ms. Maldonado’s case. The *430 court based its dismissal of Ms. Maldonado’s case on her and her attorneys’ alleged violation of the Michigan Rules of Professional Conduct, MRPC 3.6. The violation identified by the circuit court involved pretrial publicity by Ms. Maldonado and her attorneys regarding defendant Bennett’s prior conviction for indecent exposure, which Judge Giovan suggested violated Judge Macdonald’s order to exclude that evidence from trial.
The circuit court’s attempt to hold Ms. Maldonado responsible for a violation of MRPC 3.6 is unsupportable. MRPC 3.6 only applies to lawyers. The rule states:
A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding. [Emphasis added.]
Judge Giovan’s opinion reveals that he was aware that MRPC 3.6 does not apply to nonlawyers. Nevertheless, he concluded that a nonlawyer client “is not immune for knowingly doing what [her lawyers] cannot.” MRPC 3.6 does not apply to nonlawyers; therefore, it was an abuse of discretion to base the dismissal of Ms. Maldonado’s case on her violation of a rule that does not apply to her.
Further, Judge Giovan failed to identify any violation of MRPC 3.6 by Ms. Maldonado’s attorneys that warrants dismissal of the case. Judge Giovan noted that her lawyers “appeared in television news broadcasts that made specific references to Mr. Bennett’s criminal conviction.” However, Judge Giovan did not identify a specific instance when the lawyers themselves mentioned the conviction in these broadcasts or publications. My review of the record reveals that the lawyers did not themselves refer to the conviction.
*431 It is true that one year before Judge Giovan heard the defendant’s motion to dismiss and two months before defendant’s prior conviction was expunged, the law firm representing Ms. Maldonado issued a press release that referred to defendant Bennett’s prior conviction. Judge Giovan found that the press release violated MRPC 3.6, suggesting that the lawyers knew trial was imminent when the press release was issued. But the information about defendant’s prior conviction referred to in the press release was already well-publicized. Thus, it cannot be concluded that, when the press release was issued, a reasonable person would have expected that the content of the release would likely prejudice an adjudicative proceeding materially. Furthermore, contrary to the majoriiy’s assertion otherwise, because Bennett’s prior conviction was well-publicized before plaintiffs lawyer’s 2001 press release, the press release cannot be considered the source for all subsequent news publications that referred to the prior conviction.
Judge Giovan also suggested that the press release somehow violated Judge Macdonald’s February 16, 2001, order, which excluded evidence of defendant’s prior conviction from trial. However, while Judge Macdonald’s order excluded the evidence of defendant’s prior conviction from trial, it did not prohibit any and all public reference to the prior conviction by either plaintiff or plaintiffs lawyers.[2] For these reasons, it was *432 not reasonable for Judge Giovan to premise his dismissal of plaintiffs case on the actions of her lawyers.
The majority admits that MRPC 3.6 does not apply to Ms. Maldonado because she is not a lawyer. Ante at 396. Further, like Judge Giovan, the majority fails to identify any specific instances in which Ms. Maldonado’s lawyers violated MRPC 3.6. But, rather than acknowledging the circuit court’s abuse of discretion in relying on MRPC 3.6 to dismiss Ms. Maldonado’s case, the majority grasps for and creates its own alternative justifications for the circuit court’s order.
The majority’s primary justification for its decision to affirm the order of dismissal is the need for order in the court. In this case, the majority concludes that the dismissal of Ms. Maldonado’s case was authorized under MCR 2.504(B)(1), which provides:
If the plaintiff fails to comply with [the court] rules or a court order, a defendant may move for summary dismissal of an action or a claim against that defendant.
However, the mere fact that the court rule permits the circuit court to dismiss a case does not mean that *433 dismissal is justified on a whim. By the plain terms of MCR 2.504(B)(1), there must be a violation of an applicable court rule or order to justify a summary dismissal of a case.
To make it seem like MCR 2.504(B)(1) justifies the dismissal of plaintiffs case, the majority intentionally misstates the facts to make it appear that plaintiff and plaintiffs lawyers violated a court order. The majority states: “Judge Giovan expressly warned plaintiff that if she continued to disseminate information regarding Bennett’s excluded conviction in violation of Judge Macdonald’s order, he would dismiss her case. Plaintiff failed to obey this warning and, thus, Judge Giovan properly dismissed her case.” Ante at 396-397. This is untrue. The facts are: (1) Judge Giovan’s warning was not an order of the court,[3] (2) there never was a court order limiting pretrial publicity or references to defendant Bennett’s prior conviction, (3) Judge Macdonald’s order excluding evidence of defendant Bennett’s conviction for indecent exposure from plaintiffs sexual harassment trial imposed no limitation on pretrial publicity, and (4) Judge Giovan did not premise his dismissal on plaintiffs violation of his warnings; instead, he incorrectly attributed plaintiffs activities to her lawyers to support his conclusion that they had violated MRPC 3.6.
The majority also relies heavily on the assertion throughout its opinion that plaintiffs lawyers were themselves quoted publicly referring to Bennett’s prior conviction. Contrary to the majority’s assertion, none of *434 the broadcasts or articles cited by the majority quoted or discussed any statements by Ms. Maldonado’s lawyers regarding Bennett’s prior conviction for indecent exposure. In those broadcasts and articles, Ms. Maldonado’s lawyers made statements about the case and about their perception that the circuit court was biased, but not about the expunged conviction. Immediately after Judge Macdonald ruled that the conviction would be excluded, which was months before Judge Giovan was assigned the case, the lawyers were quoted as saying that they would appeal that order. Thereafter, all quoted statements about Bennett’s prior conviction were made by Ms. Maldonado, and Ms. Maldonado was not restricted by any order or court rule from making repeated public reference to Bennett’s prior conviction.
It was an abuse of discretion for Judge Giovan to attribute to plaintiffs lawyers responsibility for statements made by plaintiff and the press about the well-known fact that Bennett had a prior conviction for indecent exposure. It does not serve an organized polity for the majority to affirm a ruling that was based on a whim rather than the law.
HI
A cornerstone for an organized polity is that courts of law will act in an orderly way, as opposed to acting on a whim. In an organized society, disputes are taken to a court of law for adjudication because a court is impartial and will handle cases with fairness and pursuant to the law. Dismissing Ms. Maldonado’s case without a legal foundation is the same as dismissing the case on the basis of a whim. The majority’s decision to affirm the circuit court’s order damages *435 the integrity of the judicial system and, contrary to the majority’s rhetoric, undermines the basic tenets of an organized society.
KELLY, J., concurred with WEAVER, J.

 Specifically, Judge Giovan said:
I’m not making any decisions about this, but I’m going to tell you one thing. If I ever reach the conclusion that somebody is violating that ethical obligation and causing some difficulty in our getting a fair jury, I will dismiss the case with prejudice, or, and I should say, on the other side, grant a default judgment.
The majority incorrectly characterizes this warning by suggesting that “Judge Giovan expressly warned plaintiff that if she continued to disseminate information regarding Bennett’s excluded conviction in violation of Judge Macdonald orders, he would dismiss her case.” Ante at 396-397. Contrary to the majority’s characterization, the warning issued by Judge Giovan simply warned the parties to not violate any ethical obligation. Judge Macdonald’s order only excluded the evidence from trial, not the public forum.

 After Judge Giovan took the case over from Judge Macdonald, defendant Ford and defendant Bennett filed a joint motion for entry of an order directing that the witnesses he instructed regarding excluded evidence and impermissible testimony on July 21, 2002. In their brief supporting their request, defendants stated that every witness in the separate trial of Elezovic v Ford Motor Co had to
sign off on a statement indicating that they had been advised of the ruling by the Court regarding inadmissible evidence, and *432 that they were not to mention anything about any excluded evidence, and that they understood the consequence for mentioning any of the excluded evidence would be sanctions including contempt and imposition of all the costs of a mistrial. Defendants request the same process in this case.
The defendants apparently hoped that Judge Giovan would issue an order in this case like that which Judge Macdonald had issued in the Elezovic case to prevent witnesses from mentioning defendant Bennett’s prior conviction during their testimony on the witness stand. But Judge Giovan did not issue any such order.
In any event, the Elezovic order appears to have only limited the witnesses’ speech inside the courtroom; it was directed at preventing impermissible testimony during the Elezovic trial regarding defendant Bennett’s prior conviction that Judge Macdonald had ordered to be excluded from the evidence.

 Referring to the -warning at the July 3, 2002, hearing on plaintiffs motion for his disqualification, Judge Giovan said: “I want to say a thing about gag orders. You’ve called what I said in court a gag order. Not so. As a matter of fact, I don’t believe in gag orders. I’ve never issued a gag order.”